IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA, CASE NO. 26-cr-00074-RDAVAED

v.

JORGE FIGUEIRA,

Defendant.

_______________________________/

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING AND INCORPORATED MOTION FOR A DOWNWARD VARIANCE PURSUANT TO 18 U.S.C. § 3553(a)**

Defendant, Jorge Figueira, by and through undersigned counsel, respectfully moves this Court to impose a non-advisory guideline sentence below the advisory United States Sentencing Guidelines range calculated in the Presentence Investigation Report (PSI Report). As demonstrated below, the advisory guidelines range vastly overstates the seriousness of the offense in this specific context of this case factual basis and fails to account for the unique history and characteristics of Jorge Figueira. A sentence below the advisory guideline range is "sufficient, but not greater than necessary," to comply with the statutory purposes of sentencing set forth in 18 U.S.C. § 3553(a) as follows:

## MEMORANDUM OF LAW

## I. LEGAL STANDARD

The United States Sentencing Guidelines are strictly advisory under *United States v. Booker*, 543 U.S. 220 (2005). While the Court must correctly calculate the Guideline range, it must consider

all factors listed under 18 U.S.C. § 3553(a) to fashion an individualized sentence.

A "variance" is an exercise of the Court's discretion to sentence outside the Guideline range based on the § 3553(a) factors. District courts may vary from the Guidelines based on a disagreement with Guideline policy or because the specific facts of the case place the defendant outside the "heartland" of typical offenses (*Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007)). This Court is free from the mandatory nature of the Federal Sentencing Guidelines, following the decision in *Booker* (2005). After *Booker, Gall*, and *Kimbrough-U.S. v. McBride*, 511 F. 3d 1293 (11th Cir. 2007), made clear that district courts are only required to give "some weight" to the advisory guidelines, as they are to the other 18 USC § 3553 factors, and any attempt to give special weight to the sentencing guidelines is contrary to *Booker*. However, the Supreme Court has since gone further in its recent decision in *Nelson v. United States*, 129 S. Ct. 890 (2009), where the court reiterated what it said in *Rita v. United States*, 551 U.S. 338 (2007), that a sentencing court may not presume that a sentence within the applicable guideline range is reasonable but added "the Guidelines are not only not mandatory on sentencing courts, they are also not to be presumed reasonable."

## II. ARGUMENT

### A. The History and Characteristics of the Defendant Warrant a Variance (18 U.S.C. § 3553(a)(1))

A downward variance is strongly supported by the Jorge Figueira's personal history, which demonstrates a low risk of recidivism as he was the sole source of support for his wife thus his family circumstances may warrant leniency in sentencing. *U.S. v. Johnson*, 964 F.2d 124 (2d

Cir. 1992) (affirming a downward departure where defendant was sole support for her children); *U.S. v. Califano*, 978 F.2d 65 (2d Cir. 1992) (remanding for reconsideration in light of *Johnson*); *U.S. v. Leon*, 341 F.3d 928 (9th Cir. 2003) (affirming the district court's departure based on defendant's indispensable role in caring for his wife).

- No Criminal History: Jorge Figueira falls into Criminal History Category I and has no prior criminal history at all over his entire lifetime.

- No Aggravating Factors: Jorge Figueira's offense conduct as articulated in the PSI Report represents Jorge Figueira's private business activity which was conducted by his companies which were legally incorporated in the State of Florida, paid federal income taxes and maintained local business checking bank accounts involving wire transfers of converted USDT tokens to U.S. dollars. There is no evidence before the court that any transaction made by Jorge Figueira's companies were directly connected to or directly involved any traditional aggravating factors (no controlled substances; firearms or other weapons or ammunition, non-violent, no theft or fraud, no identity theft, etc.). The 7 controlled transactions conducted with the government cooperating sources all involved documented standard bank transfers and were unconnected with any other direct criminal conduct (specified unlawful activity) and represented purely passive financial transfers without any interest whatsoever in any underlying criminal conduct (as to the 7 investigation transactions the specified unlawful activity of unspecified "drugs" and "contraband merchandise sales" were purely fictional references by the cooperating sources. Furthermore, the first 3 controlled transactions ($140,000) were negotiated between the government's confidential sources and other parties while the last 4

controlled transactions ($190,000) were made directly between the cooperating source and defendant (see Appendix "A").

- Community and Family Ties: Jorge Figueira is a married father of two wonderful adult children who holds lawful permanent resident status and a pending application for United States citizenship and has no criminal history at all.

- Acceptance of Responsibility and Remorse: Jorge Figueira did not obstruct justice and to the contrary was fully cooperative with the FBI upon his original questioning and ultimate arrest and consented to a search of his telephone and accepted responsibility for his offense conduct by entering his guilty plea and making every effort to do the right thing following his arrest with the government in his case.

B. Avoidance of Unwarranted Sentence Disparities (18 U.S.C. § 3553(a)(6))

Imposing a strict guideline sentence here would create an unwarranted disparity compared to similarly situated defendants across federal districts who engaged in passive financial transfers without proprietary ownership of or participation in any underlying criminal conduct or enterprise. A downward variance to a sentence of a significantly reduced term of incarceration aligns this case with fair sentencing outcomes nationwide. In *United States v. Juan Carlos Mendez Caicedo, Lucas Salazar, and David Salazar*, Case No. Sealed-Cr-Sealed, EDNY-All the listed defendants operated the most extensive money laundering operation in Colombian history. These defendants laundered funds for Luis Caicedo Velandia and Daniel Barrera-Barrera, two of the largest-scale drug traffickers ever prosecuted in the United States. The Government estimated that these individuals laundered over $4 billion. Similar to Jorge Figueira, they accepted

responsibility and entered into plea agreements with the government and were sentenced in 2015 to terms of probation. In *United States v. F. G.*, Case No. Sealed-Cr-Sealed, SDNY that defendant was a large-scale money launderer for the notorious paramilitary and drug trafficking organization based in Medellin, the Oficina de Envigado and after cooperation in 2015, he was sentenced to five years of supervised release. In *United States v. Gabriel Montoya aka Gabrielito*, Case No. 08-Cr-356, EDNY the defendant who was Colombian narcotics trafficker who voluntarily surrendered and cooperated was sentenced in 2012, to a term of three years' probation. In the cases cited similarly situated defendants who were actively engaged in drug trafficking were sentenced to supervision level sentences thus the disparity with the guidelines in this case is a glaring one.

---

Part 2

III. ARGUMENT IN SUPPORT OF A DOWNWARD VARIANCE

A downward variance is uniquely appropriate in this case because Jorge Figueira's background and the reality of the offense stand in sharp contrast to the mechanistic calculations of the money laundering guidelines.

1. The History and Characteristics of the Defendant Warrant Leniency (§ 3553(a)(1))

The Defendant is 60 years old (date of birth May 20, 1966) and has zero criminal history points (as well as zero unscored criminal history), placing him squarely in Criminal History Category I.

More importantly, Jorge Figueira's record is completely devoid of any prior contact with the justice system or any uncharged criminal conduct. This offense represents a complete aberration in an otherwise law-abiding, productive, and pro-social life as documented in the PSI Report.

- Family Ties and Community Support: Defendant is the married father of two wonderful adult children and has the unconditional support of community members (see attached letters of support filed with the court).
- Employment and Education History: During his life Jorge Figueira pursued his advanced education and has maintained stable, legitimate employment during his entire lifetime, demonstrating a commitment to education, honest work and family values.

2. The Financial Loss Guidelines Artificially Inflate Culpability (§ 3553(a)(1) & (2))

In money laundering and economic offenses, the Guideline range is driven almost entirely by the quantitative amount of money involved. This mechanical calculation fails to account for the qualitative nature of Jorge Figueira's specific role or intent. The Jorge Figueira did not participate in any clandestine criminal organization (his businesses were all incorporated and paid federal income taxes), nor did he use the proceeds to fund a lavish lifestyle (Jorge Figueira resided in a modest rental apartment with his wife in a middle class neighborhood in Miami, Florida and there is no evidence of any profligate spending or lavish lifestyle spending). Relying strictly on the advisory loss table guidelines results in a sentence that is disproportionate to the actual moral culpability of this first-time offender.

3. A Variance Is Consistent with Recent Sentencing Commission Policy Revisions

The United States Sentencing Commission has continuously recognized that first-time, non-

violent offenders deserve distinct consideration from the carceral system. This shift is reflected in provisions like the "Zero-Point Offender" adjustment (U.S.S.G. § 4C1.1) and ongoing updates designed to scale back excessive sentences for economic crimes. Granting a variance here aligns with the overarching policy goal of limiting prison sentences for individuals who present a negligible risk of recidivism.

4. A Below-Guidelines Sentence Protects the Public and Provides Adequate Deterrence (§ 3553(a)(2)(B)-(C))

Empirical data from the United States Sentencing Commission consistently demonstrates that individuals over age 60 with zero prior criminal history have the lowest rates of recidivism in the federal system.

- Specific Deterrence: The trauma of arrest, prosecution, incarceration and the enduring collateral consequences of a federal felony conviction provide more than sufficient deterrence against any future misconduct by Jorge Figueira.
- Public Safety: Because the Jorge Figueira poses zero threat of physical danger or systemic economic harm to the community, prolonged incarceration serves no protective utility.

Part 3

IV. THE MONEY LAUNDERING GUIDELINES DRASTICALLY OVERSTATE THE SERIOUSNESS OF THE OFFENSE

The advisory Guideline range in this case is driven entirely by U.S.S.G. § 2S1.1, which ties the

offense level to the total monetary value of the underlying laundered funds. While an escalating scale based strictly on dollar amounts may make sense where an offender actually holds a proprietary or active interest in the underlying criminal conduct, its application to Jorge Figueira's conduct creates an artificial, draconian sentencing range that completely misrepresents the reality of the crime in this case where the specified unlawful activity represented by the government's cooperating sources was entirely fictitious.

- The Guideline Punishes the Same Conduct Multiple times: Under § 2S1.1, the base offense level is determined by the underlying offense from which the funds were derived. By adding severe enhancement characteristics based on the "laundering" aspect of the exact same funds, the Guidelines create a compounding "double counting" effect. Defendant is effectively being punished multiple times for the same single pool of money. The PSI applies a base offense level punishment of 38 levels (subject to a separate objection) which is then increased by 6 levels because the government cooperating source told Jorge Figueira that the funds were from a fictitious controlled substance source and then increased again by 2 levels under 18 U.S.C. § 1956 for fictitious promotion activity and an additional 2 levels for sophisticated laundering. The advisory guideline calculations grossly overstate the offense conduct by punishing the same conduct 4 times and as applied a rote application thereof would represent a gross miscarriage of justice.

- Absence of Sophisticated Laundering Layering: The Defendant's conduct did not involve complex offshore shell companies, layered Swiss bank accounts, or sophisticated financial structuring (there was no evidence or allegation of "Smurfing" or "Jackpotting"-

common online cryptocurrency techniques used to disguise funds) and other efforts at concealment meant to get around the banking system. On the contrary, the transactions were rudimentary, transparent, and easily traceable as evidenced by the ease at which the government was able to reconstruct Jorge Figueira's entire business history in painstaking detail in the Criminal Complaint filed in this case. In every transaction, including the 7 transactions with the government, a fully documented paper trial existed which memorialized the conversion of USDT tokens to U.S. dollars which were then wired from Jorge Figueira's business bank accounts to the government's bank account including text messages and digital receipts. The rote application of § 2S1.1 treats simple conversions and transmissions of funds which occurred in this case with the same administrative severity as high-level cartel-style laundering operations and supports and downward variance sentence.

- The Guidelines are Flawed and Lacks Empirical Backing: Like the crack-cocaine guidelines rejected in *Kimbrough*, the financial tables under the money laundering guidelines are largely arbitrary and not the product of empirical Sentencing Commission studies regarding recidivism or deterrence. Consequently, blind adherence to the § 2S1.1 calculation fails to achieve a "just punishment." Recent amendments to §2D1.1 (applied to controlled substance cases) allow for huge reductions in guideline exposure in the cases of large amounts of controlled substances which greatly mitigate the sentences of controlled substance offenders (US.S.G. Amendment 833 imposes capped lower base offense levels for offenders to reflect reduced culpability in volume cases). The final advisory guideline computation in this case is similarly an arbitrary application where the

only documented criminal conduct involved the 7 undercover transactions totaling $330,000 where defendant's companies fees totaled $9,823.63 or a 2.9% commission. The actual value of documented fees received being less than $10,000 reflects the grossly disproportionate application of the guidelines in this case mandating a downward variance sentence for Jorge Figueira.

V. A BELOW-GUIDELINE SENTENCE IS WARRANTED UNDER THE 18 U.S.C. § 3553(a) FACTORS

A sentence within the advisory Guideline range would be far greater than necessary to achieve the goals of justice. The § 3553(a) factors heavily favor a downward variance:

1. The Nature and Circumstances of the Offense: As detailed above, the offense level is artificially inflated by the sheer volume calculation of the funds rather than the degree of culpability or sophistication of Jorge Figueira and the actual investigation offense conduct (7 undercover transactions).

- History and Characteristics of the Defendant: Defendant is the married father of two wonderful adult children and has the unconditional support of community members (see attached letters of support filed with the court). Furthermore, Jorge Figueira pursued his advanced education and has maintained stable, legitimate employment during his entire lifetime, demonstrating a commitment to education, honest work and family values. All of his companies maintained websites on the internet, were incorporated in the State of Florida (See Appendix "B") and paid federal income taxes making no effort to conceal or obfuscate any of the business activities and maintained full transparency and used

traditional domestic business checking accounts. The government was able to document the entirety of Jorge Figueira's business in the criminal complaint filed as every transaction was memorialized with meticulous accuracy down to the penny.

2. Defendant's lack of prior criminal history, community involvement, family and community support, employment and educational history, and deep-seated remorse all support a downward variance sentence (see letters of support).

3. Adequate Deterrence and Protection of the Public: Jorge Figueira, at age 60, poses absolutely zero risk of recidivism or danger to the community in light of the non-violent nature of the charge and his personal history and lack of any criminal history at all. A below-guideline sentence involving a significantly reduced prison term paired with asset forfeiture provides substantial specific and general deterrence.

4. Jorge Figueira fully accepted responsibility, pled guilty and has complied fully with his obligations under the terms of his plea agreement and has provided full discovery to the government regarding every single transaction made by his companies which will be presented before the court at sentencing in support of a downward variance sentence.

5. Jorge Figueira's offense conduct does not include any connection proprietary or otherwise to any actual alleged specified unlawful activity and Jorge Figueira held no interest in any of the transaction companies underlying activities other than the informants representations of the fictitious contraband merchandise and controlled substance claims the absence of which all support a downward variance sentence.

6. Jorge Figueira voluntarily forfeited to the government $207,316.17 from his TD Bank account, more than 20 times the amount of the fees received in the undercover transactions which supports a downward variance sentence.

7. Jorge Figueira's offense conduct alleges no listed victim, no weapon, firearm or ammunition or any detectable amount of any controlled substance, nor any allegation of identity theft or theft/fraud of any kind all of which support a downward variance sentence.

8. Jorge Figueira's early acceptance of responsibility and guilty plea allowed the government the added benefit in addition to saving the expense and time of a jury trial that the identity of the confidential informants used in this case remains preserved and supports a downward variance sentence.

9. Jorge Figueira is 60 years of age and suffers from diagnosed medical conditions specified in the PSI Report which support a downward variance sentence.

10. Jorge Figueira's companies received 2.9%, less than $10,000 in fees for the 7 undercover transactions which totaled $320,000 and there was no profligate spending or lavish lifestyle spending by Jorge Figueira which supports a downward variance sentence.

11. Jorge Figueira, as a non U.S. citizen will be denied specific benefits available to U.S. citizen in the Bureau of Prisons and will further be subject to removal proceedings upon the expiration of his sentence resulting in a lengthy period of additional incarceration in immigration custody both of which support a downward variance sentence. The decision in *U.S. v. Smith*, 27 F.3d 649 (D.C. Cir. 1994), recognizes the departure factors that, (1)

because of his status as an "extraditable", (2) because he is ineligible for community release as otherwise statutorily mandated under 18 U.S.C. §§ 3621(b) and 3624(c), and (3) because he will essentially serve more time than required under the jail sentence and will have to go through ICE deportation proceedings, these factors may warrant a variance or departure-and certainly apply to Jorge Figueira in this case warranting a downward variance sentence.

12. Jorge Figuera has demonstrated post arrest rehabilitation as he is a trusted member of the Alexandria Adult Detention Center kitchen staff and works every day from 3 a.m. to noon preparing meals and other duties-he is in a limited section of the jail capped at 20 inmates with open doors and other privileges and is paid $28 per week. *Pepper v. United States*, 131 S. Ct. 1229 at 1242-1243 (2011), allows the Court to consider that Jorge Figueira is highly remorseful for his offense conduct and has demonstrated that during his incarceration. Jorge Figueira (1) has a hopeful future awaiting him with very strong established family, (2) has freely acknowledges his guilt, and (3) expresses his remorse by immediately speaking with the agents and accepting responsibility and promptly negotiating a guilty plea, and most importantly, taking steps to do the right thing including providing valuable help at the detention center.

13. Other matters ore tenus.

CONCLUSION

Pursuant to 18 U.S.C. §3553(a), the Court is required to impose the least severe sentence necessary to satisfy the four purposes of sentencing enumerated in the statute. For all of the foregoing reasons and citations of fact and law, Defendant Jorge Figueira respectfully requests that this Court grant this Motion for a Downward Variance and impose lenient downward variance sentence in this case.

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by ECF upon the prosecutor, this 26th day of October, 2026.

/s/ A. Wallace

______________________________

ARTHUR L. WALLACE, III, ESQ.
Pro Hac Vice Counsel for Defense
Florida Bar No. 769479
**Arthur Wallace**
Attorney at Law PLLC
Miami Tower-Suite 2000
100 Southeast 2nd Street
Miami, Florida 33131 U.S.A.
Phone/Text: (305) 535-9957
**Email: WallaceLawFirm@Yahoo.com**

/s/ J. Mykytiuk

______________________________

Jay Paul Mykytiuk, Esq.
Monument Legal
1100 H Street, NW, Suite 1010
Washington, D.C. 20005
Phone: (202) 670-2390
Email: cjm@monumentlegal.com

Jorge Figueira

Controlled Transactions-With UCI-To Wells Fargo (FBI) in Alexandria, VA

| **Date** | **Amount** | **Net to FBI** | **Fee for Figueira Co.** |
|---|---|---|---|
| *012324* | *$20,000* | *$19,300* | *$700* |
| *022824* | *$70,000* | *$67,550* | *$2450* |
| *050724* | *$50,000* | *$45,000* | *$5000- (others)* |
| 112124 | $20,000 | $19,839.56 | $163.36 |
| 011725 | $20,000 | $19,839.56 | $160.44 |
| 022125 | $50,000 | $49,605.23 | $394.77 |
| 110725 | $100,000 | $99,044.94 | $955.06-(Figueira) |
| **Totals** | **$330,000** | **$320,176.37** | **$9823.63** |

**APPENDIX "A"**

Jorge Figueira

Business Entities Organized in the State of Florida

These entities were related to the USDT Exchange Business

| Date Incorporated | Entity Name | Entity Number |
|---|---|---|
| 070219 | ARETI HOLDINGS INC. | F19000003020 |
| 091624 | BASCIANO TRADING CORPORATION | F24000004870 |
| 080921 | UNIQUE FINANCE LLC | L21000357076 |
| 080423 | FALCON FINANCIAL LLC | L23000367472 |

**These entities were not related and never did business transactions**

| | | |
|---|---|---|
| 070725 | LUMAR PRESTIGE CORP | P25000039547 |
| 112725 | UNIQUE FINANCE HOLDINGS INC | P25000064502 |

APPENDIX “B”